IN THE UNITED STATES DISTRICT COURT
FOR THE WESTEERN DISTRICT OF MISSOURI

| | |
|---|---|
| KIMBERLY A. JACKSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LOUIS DEJOY, ) | Case No. _____ |
| POSTMASTER GENERAL, ) | |
| UNITED STATES POSTAL SERVICE ) | |
| ) | |
| DEFENDANT. ) | |

### COMPLAINT WITH JURY DEMAND

Plaintiff Kimberly A. Jackson ("Jackson"), by and through her counsel of record, states her causes of action against defendant Louis DeJoy and the United States Postal Service ("USPS") as follows:

1. This is an action for race and gender discrimination, hostile work environment, and retaliation. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, *et. seq.* and 29 C.F.R. §1614.101 (a) and (b).

### JURISDICTION AND VENUE

2. Jurisdiction is proper in this Court, because federal questions are involved, pursuant to 28 U.S.C. §1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that employment practices alleged to be unlawful were committed within this judicial district.

### PARTIES

4. Plaintiff Jackson is an individual resident of Missouri.

5. Defendant Louis DeJoy is the Postmaster General of the United States Postal Service ("USPS") and is the top Administrator for the USPS. The USPS is an Agency of the United States.

6. At all times relevant herein, Jackson was an employee of the USPS located in Kansas City, Missouri.

7. At all times relevant to the allegations in this Complaint, USPS was an employer within the meaning of Title VII.

8. At all times relevant to the allegations in this Complaint, all of the USPS's employees were acting within the scope of their employment.

## ADMINISTRATIVE PROCEEDINGS

9. On April 2, 2019, Jackson contacted the EEO office to make an informal complaint for discrimination and harassment pursuant to 29 C.F.R §1614.105(a)(1).

10. On or about July 8, 2019, Jackson asserted a timely formal EEO complaint for race and sex discrimination.

11. Jackson then requested a Final Agency Decision ("FAD").

12. On October 6, 2020, the USPS issued a Final Agency Decision ("FAD") pursuant to 29 C.F.R. § 1614.110.

13. Jackson then filed an appeal to the U.S. Equal Employment Opportunity Commission from the FAD.

14. The Commission issued a Decision on March 14, 2022, which informed her of her right to sue within ninety (90) calendar days from her receipt of the Decision.

15. This action has been timely commenced within ninety days of Jackson's receipt of her notice of right to sue, and she has otherwise met all conditions precedent to filing this action.

2

## FACTS COMMON TO ALL COUNTS

16. Jackson is a Black woman who has been continuously employed by the USPS since 1997.

17. At the time of the events giving rise to this Complaint, Jackson was a Labor Custodian, Level 4.

18. Beginning in in August 2012, Jackson started working at the USPS's Kansas City Processing & Distribution Center facility in Kansas City, Missouri.

19. In late 2016, Jackson transferred to the USPS facility at the KCI Airport, known as Jesse Donaldson.

20. At all times relevant to this Complaint, management over the facility consisted of the following individuals:

   a. Gerald Groves, Lead of Maintenance Operations and Maintenance Manager.

   b. Danielle Porter, Supervisor Maintenance Operations

   c. William Rice, Postal Liaison to FedEx, now Supervisor Distribution Operations

   d. Jeffrey Dumas, Manager Maintenance Operations.

   e. Paul Greenblatt, Manager Maintenance Lead (Retired).

   f. Oliver McGee, Supervisor Maintenance Operations.

   g. Cynthia Vinyard, Acting Supervisor Customer Service.

   h. Dwight Eddington, Acting Supervisor Maintenance Operations.

21. Beginning in late 2016 and continuing through April 2019, Jackson was persistently and continuously harassed because of her race and sex by a coworker, Michael Wentworth.

3

Wentworth's conduct and comments that created the pervasive hostile work environment included the following:

   a. Calling her a "Black Bitch."

   b. Calling her and another coworker "lazy nigger."

   c. Telling her she was not likely to pass her criminal background check when refusing to provide her with a locker for her personal effects.

   d. Spreading false sexual rumors about her, such as the only reason Jackson was at the Airport was because she performed oral sex on Mr. Groves and that Jackson was sleeping with two men at the Cleveland post office.

   e. Turning off the lights in the hallway leading to the women's restroom and in areas where Jackson was working, leaving her to work in the dark.

   f. Turning off the lights in the women's restroom while she was in there.

   g. Padlocking the maintenance office, doors, and lockers to prevent her from accessing it.

   h. Tampering with the heat and air conditioning which made the work environment unbearably cold or hot.

   i. Blocking her from exiting the women's restroom by standing in the doorway and intimidating her.

   j. Brushing up against her with his body in the custodial closet.

   k. Staring and leering at Jackson while rubbing his crotch.

   l. Rattling locks on the lockers outside the women's restroom while she was in the restroom to intimidate her.

   m. Following her closely at work, and stepping on her shoes, to intimidate her.

4

  n. Threatening her by stating her was going to "get" her.

  o. Defacing bathroom walls with feces and urine, flooding toilets, and dumping trash on the floor.

  p. Letting the air out of her tires.

  q. Crazy-gluing her padlock on her locker.

  r. Screaming profanities at her, and

  s. Assaulting her with a knife at work.

22. Plaintiff repeatedly informed management about Wentworth's harassment and intimidation, including each of the above-named supervisory and management personnel: Porter, Rice, Dumas, Groves, McGee, Vinyard, and Eddington.

23. When Jackson complained to Mr. Rice about the offensive racial and sexual harassment, he replied that she just had to accept Wentworth's behavior because Maintenance was not going to move him as he caused too many problems at Cleveland, the main post office in Kansas City, Missouri.

24. Jackson complained repeatedly to her direct supervisor, Ms. Porter. Specifically, when she reported Wentworth's racial and sexual harassment to Porter in December 2016, Porter first told her to ignore Wentworth.

25. On numerous occasions after December 2016, when Jackson reported Wentworth's offensive harassment to Porter, Porter would simply tell her to document it or keep documenting it.

26. On some occasions, when Jackson's reports of sexual harassment were particularly offensive, Porter would tell Jackson that she would speak to Mr. Groves.

5

27. Jackson completed written complaints of harassment, including Form-13 reports detailing severe incidents of Wentworth harassing her in the women's bathroom and for hiding in the darkened women's bathroom and hallway. Her supervisor, Porter, instructed her to file these written reports, but nothing was done in response to these complaints.

28. On more than one occasion, supervisor Porter stated to Jackson that management was aware of Wentworth's behavior, but they could not "prove it."

29. Whenever Jackson reported the harassment to management, Wentworth became angrier and increased his intimidation and harassment.

30. After one of her reports of harassment to management in December 2016, Wentworth accosted Jackson and accuse her of being a snitch.

31. On January 25, 2019, Wentworth pulled a knife on Jackson in a dark hallway at work. When she reported this assault, management official Dumas told her to report to the USPS Barrywoods and Gladstone locations for work and she was instructed to work 4 hours at each station to complete her 8-hour workday. Groves was the management official who made the retaliatory decision to move her from Jesse Donaldson.

32. USPS management forced Jackson to move because Wentworth had threatened to shoot the employees at Gladstone, and had been accused of sexually harassing numerous employees at Gladstone causing him to be banned from Gladstone in 2018.

33. Jackson took leave from work for stress after the assault until March 2019.

34. On February 14, 2019, Wentworth assaulted and threatened a postal service contractor's employee, Kory Gallagher, who is a white male.

35. On March 13, 2019, management officials McGee and Eddington informed Jackson and her co-workers that Wentworth would be returning to Jesse Donaldson on March 15, 2019.

6

McGee instructed them not to call the police when Wentworth reported for duty and informed them that Wentworth had been instructed to leave them and the lights alone. On his way out the door, Eddington stated to Jackson "You know he is not going to leave you alone" and that she knew what she "needed to do."

36. Pursuant to the Postal Service's Weapons and Explosives policy (PSN 7690-03-00-9181), employees are not allowed to carry firearms, dangerous or deadly weapons or explosives on postal property. Management violated this policy by failing to notify USPIS when Wentworth pulled a knife on Jackson, and by failing to discipline or discharge Wentworth.

37. Pursuant to the Postal Service's Zero Tolerance policy (PSN 7690-07-000-7099), the Postal Service will not tolerate any workplace harassment or other inappropriate conduct based on any protected category. Management violated this policy by allowing Wentworth to continue to harass Jackson to work after he harassed and assaulted Jackson.

38. On March 19. 2019, Jackson reported Wentworth's assault and harassment to TSA Security Inspector Michael Bakley and asked for assistance. Shortly afterwards, Bakley's secretary told Jackson that the Director of Airport Police was expecting her call.

39. Jackson then reported the assault and harassment to the Airport Police and the Director dispatched officers immediately to Jesse Donaldson. Shortly after speaking with the officers, Detective Campo met with Jackson and started an investigation, which resulted in Wentworth being charged with felony and misdemeanor assault charges.

40. During Campo's investigation, Jackson was informed that none of the incidents she had reported to her supervisors had been reported to the USPIS, TSA or the Airport Police.

41. USPS management led Jackson to believe that USPIS had been notified and that her complaints of harassment and assault was being actively investigated, and that the USPIS had informed management in the past that they did not have the proof to proceed with an investigation.

42. By their conduct, the USPS management condoned Wentworth's harassment, which itself is a form of harassment as they went to great lengths to deceive her to protect Wentworth.

43. USPS policy (PSN 7690-07-000-7099) requires any manager or supervisor who receives a complaint to act to stop any inappropriate behavior, ensure that a prompt and thorough investigation is conducted, and ensure that the harassing or inappropriate conduct does not persist, even if the behavior does not rise to the legal definition of harassment. USPS management violated this policy because they did not make any attempt to stop the harassment and did not ensure that a prompt and thorough investigation was conducted by their failure to contact USPIS, TSA, or the Airport Police.

44. The USPS policy MOP DD-10-04-2014 outlines behavior that USPS considers unacceptable, such as bullying and creating a hostile work environment.

45. USPS management violated their Zero Tolerance Policy because Plaintiff's harasser was allowed to continue to work after he harassed and assaulted Plaintiff, and management failed to investigate or take appropriate action to stop the harassment.

46. Plaintiff's managers intentionally subjected Jackson to a hostile work environment because of her race and sex through their conduct in protecting Wentworth, a white man, and their failure to take the assault of Jackson seriously.

47. On March 15, 2019, Wentworth received a 14-day suspension from McGee, with Dumas signing as the reviewing authority, for "Unacceptable Conduct" due to his involvement in

the verbal and physical confrontation on February 14, 2019 with Kory Gallagher, an employee of Matheson Flight Extenders.

48. On March 28, 2019, Wentworth was taken into police custody at the KCI Airport Police Department regarding the assault of Jackson that occurred on January 25, 2019.

49. In May 2019, Jackson was granted a Full Order of Protection against Wentworth due to his continued stalking and harassment based on sex and race.

50. Wentworth's conduct was racially motivated in that he called Plaintiff a "black bitch," a "nigger," and told her she was not going to be able to pass her criminal background check.

51. Wentworth's conduct was sexually motivated in that he initiated malicious sexual rumors about Plaintiff, rubbed his crotch in her presence, and continually harassed her whenever she was in the women's bathroom.

52. Plaintiff was subjected to a hostile work environment when she became afraid to be in dark, enclosed spaces at work that had only one way out.

53. Due to the unlawful harassment and assault, and management's discriminatory and retaliatory conduct, Jackson was forced to take annual leave and sick leave she would not otherwise have had to use. She also incurred medical expenses and miscellaneous costs as a result of the unlawful harassment and assault.

54. Jackson has experienced economic damages because of the discrimination in that she is responsible for all of her medical treatments, prescriptions and miscellaneous costs, such as gas and co-pays, related to the treatment necessitated by the unlawful harassment and assault.

55. Jackson has been diagnosed with PTSD as a result of the harassment and discrimination she suffered. She suffers with nightmares, insomnia, anxiety, depression and

panic attacks. She has sought therapy and has had to take medication for her condition. She did not have these difficulties prior to the acts of discrimination alleged herein.

56. As a result of the conduct of the USPS, Plaintiff's panic and anxiety attacks increased and her nightmares and insomnia required prescribed medication to help her sleep.

57. Since April 2016 and continuing through the present, the pervasive, sexually and racially hostile work environment has continued to persist, requiring Jackson to file another EEO complaint for the continuing harassment and retaliation.

## COUNT I

**Title VII – Sexually Hostile Work Environment and Discrimination based on Sex**

58. Jackson incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

59. Jackson, a female, was and is a member of a protected group under Title VII.

60. During the course of her employment, Plaintiff was subjected to intentional discrimination and sexual harassment against her (hereinafter "unlawful conduct"), based on her sex, in violation of Title VII.

61. The conduct of Wentworth, as described above, created a sexually hostile work environment.

62. The unlawful conduct as described above had the purpose and effect of unreasonably interfering with Jackson's work performance, thereby creating an intimidating, hostile and offensive working environment.

63. The harassment caused severe anxiety and stress to plaintiff, which caused her to suffer physical and emotional problems.

64. The conduct as described herein would have offended a reasonable person of the same sex in Jackson's position.

65. Senior management employees of the USPS knew, or should have known, of the sexual harassment, intimidation, and sexual discrimination described herein, but failed to take appropriate remedial action.

66. By failing to conduct a prompt, thorough and honest investigation of Jackson's allegations, USPS exacerbated the hostile environment and discrimination in Jackson's work place.

67. Because of its actions, USPS deliberately rendered Jackson's working conditions intolerable.

68. Defendant failed to make good faith efforts to enforce policies to prevent unlawful discrimination against its employees, including Plaintiff.

69. Defendant failed to properly train or otherwise adequately inform their supervisors and employees concerning the duties and obligations under the civil rights laws, including Title VII.

70. As a result of the hostile work environment, Jackson has been deprived of and will continue to suffer economic and non-economic damages.

71. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered mental anguish, emotional pain, suffering and distress, embarrassment, humiliation, inconvenience, loss of enjoyment of life and related compensatory damages as alleged above.

72. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is

therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other agencies from like conduct in the future.

73. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided by Title VII.

74. WHEREFORE, Jackson prays for judgment against Defendant on Count I of this Complaint; for a finding that she has been subjected to a sexually hostile work environment and unlawful discrimination prohibited by Title VII; for an award of economic, compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees, costs and expenses; and for such further relief as the Court deems just and proper.

## COUNT II

**Title VII – Racially Hostile Work Environment and Discrimination based on Race**

75. Jackson incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

76. Jackson, a black person, was and is a member of a protected group under Title VII.

77. As shown by the foregoing, Plaintiff was subjected to intentional discrimination and racial harassment against her (hereinafter "unlawful conduct"), based on her race, in violation of Title VII.

78. The conduct of Wentworth, as described above, created a sexually hostile work environment.

79. The unlawful conduct as described above had the purpose and effect of unreasonably interfering with Jackson's work performance, thereby creating an intimidating, hostile and offensive working environment.

80. The harassment caused severe anxiety and stress to plaintiff, which caused her to suffer physical and emotional problems.

81. The conduct as described herein would have offended a reasonable person of the same race in Jackson's position.

82. Senior management employees of the USPS knew, or should have known, of the sexual harassment, intimidation, and sexual discrimination described herein, but failed to take appropriate remedial action.

83. By failing to conduct a prompt, thorough and honest investigation of Jackson's allegations, USPS exacerbated the hostile environment and discrimination in Jackson's work place.

84. Because of its actions, USPS deliberately rendered Jackson's working conditions intolerable.

85. Defendant failed to make good faith efforts to enforce policies to prevent unlawful discrimination against its employees, including Plaintiff.

86. Defendant failed to properly train or otherwise adequately inform their supervisors and employees concerning the duties and obligations under the civil rights laws, including Title VII.

87. As a result of the hostile work environment and the discriminatory terms and conditions of employment, Jackson has been deprived of and will continue to suffer economic and non-economic damages.

88. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered mental anguish, emotional pain, suffering and distress, embarrassment,

humiliation, inconvenience, loss of enjoyment of life and related compensatory damages as alleged above.

89. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other agencies from like conduct in the future.

90. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided by Title VII.

91. WHEREFORE, Jackson prays for judgment against Defendant on Count II of this Complaint; for a finding that she has been subjected to a racially hostile work environment and unlawful discrimination prohibited by Title VII; for an award of economic, compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees, costs and expenses; and for such further relief as the Court deems just and proper.

## COUNT III

### Title VII – Retaliation

92. Jackson incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

93. Jackson's internal complaints concerning the racial and sexual discrimination and harassment constituted protected activity.

94. Defendant retaliated against Jackson because of her protected activity as allege above.

95. As a result of the unlawful retaliation to which she was subjected, Jackson has been deprived of and will continue to suffer economic and non-economic damages.

96. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered mental anguish, emotional pain, suffering and distress, embarrassment, humiliation, inconvenience, loss of enjoyment of life and related compensatory damages as alleged above.

97. Defendant's retaliation against Plaintiff was committed with malice or reckless disregard of her federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other agencies from like conduct in the future.

98. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided by Title VII.

99. WHEREFORE, Jackson prays for judgment against Defendant on Count III of this Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by Title VII; for an award of economic, compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees, costs and expenses; and for such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Jackson demands a jury trial on all issues so triable in this action.

BROWN & CURRY, LLC

*/s/ Sarah A. Brown*
Sarah A. Brown, MO# 37513
Daniel G. Curry, MO#58264
1600 Genessee, Suite 956
Kansas City, MO 64102
(816) 756-5458
(816) 666-9596 (Fax)
sarah@brownandcurry.com
dan@brownandcurry.com
ATTORNEYS FOR PLAINTIFF

15